IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

RUDD EQUIPMENT COMPANY, INC.,

          Plaintiff,

v.                                CIVIL ACTION NO. 3:09-1551

TERRY RAINES CONTRACTING, LLC,
TERRY RAINES and CRISSA RAINES,

          Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are Defendant Terry Raines Contracting, LLC's Motion to Dismiss Counts VI and VII of Plaintiff's Complaint [doc. no. 9], Defendant Terry Raines' and Defendant Crissa Raines' Motion to Dismiss Plaintiff's Complaint [doc. no. 10], and Plaintiff Rudd Equipment Company, Inc.'s Motion to Dismiss Counterclaim [doc. no. 13]. For the following reasons, the Court **DENIES** Defendants' motions and **GRANTS** Plaintiff's motion.

This case involves a contract dispute between Plaintiff and Defendants. Between January and June of 2009, the parties entered into five separate rental agreements in which Terry Raines Contracting, LLC (hereinafter TRC) agreed to lease construction equipment from Rudd Equipment Company, Inc. (hereinafter Rudd) for a minimum of 12 months. According to Rudd, in May of 2009, TRC agreed to purchase the equipment being leased if Rudd would facilitate a financing package and discount the rental amount on at least one piece of equipment. Rudd states that it fully complied with TRC's request but, instead of buying the equipment from Rudd, TRC stopped paying rent and purchased the equipment from a competitor. Therefore, Rudd filed this

action alleging seven causes of action. Counts I through V are for breach of contract of the five separate rental agreements. Count VI is for Fraud and Misrepresentation, and Count VII is for Piercing the Limited Liability Company Veil of Raines Contracting.

Defendants filed an Answer and a Counterclaim against Rudd. In Count I of their Counterclaim for Misrepresentation/Detrimental Reliance, Defendants allege that one of Rudd's salesmen suggested TRC purchase the leased equipment. According to TRC, the salesman also said that it should suspend its rent payments while Rudd worked on a financing arrangement. When Rudd failed to secure financing, TRC states that Rudd attempted to improve its negotiating position to collect the suspended lease payments, with interest, by filing this action. TRC states that the salesman's statement to suspend rental payments while financing was completed was either true, giving rise to a claim for detrimental reliance, or false, giving rise to a claim for fraud. In Count II, Defendants also allege that Rudd committed an Abuse of Process by bringing this action.

In their respective motions, TRC moves to dismiss Counts VI and VII, Terry and Crissa Raines move to dismiss the entire Complaint against them, and Rudd moves to dismiss Defendants' counterclaims. The Court will address Defendants' motions first and then address Rudd's motion.

# I.
# STANDARD OF REVIEW

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the United States Supreme Court disavowed the "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41 (1957), which was long used to evaluate complaints subject to 12(b)(6) motions. 550 U.S. at 563.  In its place, courts must now look for "plausibility" in the complaint.  This standard requires a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal quotation marks and citations omitted).  Accepting the factual allegations in the complaint as true (even when doubtful), the allegations "must be enough to raise a right to relief above the speculative level . . . ." *Id.* (citations omitted).  If the allegations in the complaint, assuming their truth, do "not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* at 558 (internal quotation marks and citations omitted).

In *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), the Supreme Court explained the requirements of Rule 8 and the "plausibility standard" in more detail.  In *Iqbal*, the Supreme Court reiterated that Rule 8 does not demand "detailed factual allegations[.]" 129 S. Ct. at 1949 (internal quotation marks and citations omitted).  However, a mere "unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient. *Id*.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).  Facial plausibility exists when a claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Id.* (citation omitted). The Supreme Court continued by explaining that, although factual allegations in a complaint must be accepted as true for purposes of a motion to dismiss, this tenet does not apply to legal conclusions. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). Whether a plausible claim is stated in a complaint requires a court to conduct a context-specific analysis, drawing upon the court's own judicial experience and common sense. *Id.* at 1950. If the court finds from its analysis that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id.* (quoting, in part, Fed. R. Civ. P. 8(a)(2)). The Supreme Court further articulated that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*

## II.
## DISCUSSION

### A.
### Claim of Fraud and Misrepresentation

In their motions, both TRC and Terry and Crissa Raines move to dismiss Plaintiff's claim of fraud and misrepresentation for not complying with Rule 9(b) of the Federal Rules of Civil Procedure.[1] Pursuant to Rule 9(b), "[i]n alleging fraud . . ., a party must state with particularity the

---

[1] The Court notes that Defendants only filed motions and not any memoranda in support of their motions. Local Rule of Civil Procedure 7.1(a)(2) requires that memoranda be filed in support of a motion to dismiss. The Court expects adherence to this Rule in the future.

circumstances constituting fraud . . . . Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Fed. R. Civ. P.* 9(b). Defendants asserts that Rudd has failed to plead sufficient facts to support its claim that TRC's representations were knowingly false and misleading.

Rudd responds by stating the Rule only requires a plaintiff to plead "with particularity . . . the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *In re Mutual Funds Inv. Litig.*, 566 F.3d 111, 120 (4th Cir. 2009) (internal quotation marks and citation omitted). "These facts are often referred to as the who, what, when, where, and how of the alleged fraud." *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir.2008) (internal quotation marks and citation omitted). Rudd asserts that it has met this requirement in its Complaint because it has alleged (1) Defendants made the representations; (2) the representations were false because Defendants stated they would purchase the leased equipment and did not do so; (3) Defendants made these representations in May of 2009; and (4) Defendants obtained the benefit of using the equipment after it stopped paying rent because Rudd relied upon Defendants' promise that TRC would purchase the equipment. Upon review of these allegations, the Court agrees with Rudd that it has alleged sufficient facts to survive a motion to dismiss under Rule 9(b).

TRC further argues that, even if the Court were to find that Rudd's allegations are sufficient under Rule 9(b), Rudd's claim fails because the Rental Agreement has a no purchase option clause which provides:

>NO PURCHASE OPTION. This Rental Agreement contains no purchase option. If at any time during the Rental Period, CUSTOMER desires to purchase the Equipment, RUDD will enter into good faith negotiations, but neither party shall have any obligation to agree to a purchase.

*Rudd Equipment Company - Rental Agreement, at* ¶ 6B. Defendants asserts that, pursuant to this paragraph, Rudd could not have relied upon any alleged statements made by TRC's officers that TRC intended to purchase the leased equipment. On the other hand, Rudd argues this language does not prohibit a future purchase of the equipment, it simply precludes an obligation under the lease to purchase the equipment. Thus, Rudd argues it is not barred from making a claim for fraud and misrepresentation with respect to Defendants' subsequent statements that TRC would purchase the equipment.

At this point in the proceedings, the parties have not fully briefed their interpretations of the meaning of the "no purchase option" paragraph in the contract. However, for purposes of a motion to dismiss, the Court agrees with Rudd that it is has sufficiently stated a claim that Defendants and Rudd had a separate agreement, aside from the lease, to purchase the equipment. As Rudd's claims for fraud and misrepresentation appear to be based on this separate agreement, the Court denies Defendants' motion to dismiss this claim.

## B.
## Piercing the Corporate Veil

In Count VII, Rudd seeks to pierce the corporate veil of TRC. In the Complaint, Rudd alleges Terry and Crissa Raines are the organizers, managers, and only members of TRC and they intentionally undercapitalized the company and operated it as a shell limited liability company.

Rudd further asserts that Defendants failed to adhere to corporate formalities such that separate personalities between the company and Terry and Crissa Raines did not exist. Therefore, Rudd asserts that Defendants should be held jointly, separately, and individually liable for any amounts due Rudd.

Defendants first move to dismiss Count VII by arguing that piercing the corporate veil is a legal doctrine that should not be asserted as a separate and distinct cause of action. Defendants cite no cases to support its position, and the Court finds this argument without merit. Next, Defendants assert that Rudd has failed to make sufficient allegations which, even if true, would support piercing the corporate veil. Again, the Court disagrees.

Rudd claims that Terry and Crissa Raines are the sole organizers, managers, and members of TRC and they failed to observe corporate formalities. Specifically, Rudd asserts that Terry and Crissa Raines commingled funds in their personal accounts with funds in TRC accounts. Rudd also alleges that Terry and Crissa Raines intentionally undercapitalized TRC in such a way to defraud and harm creditors like Rudd and, in fact, they abandoned the company to avoid creditors. Rudd thus asserts it would be unjust and inequitable to allow Terry and Crissa Raines to escape liability.

In Syllabus Point 3 of *Laya v. Erin Homes, Inc.*, 177 W. Va. 343, 352 S.E.2d 93 (1986), the West Virginia Supreme Court stated that to pierce the corporate veil and hold shareholders personally liable in a breach of contract case

> there is normally a two-prong test: (1) there must be such unity of interest and ownership that the separate personalities of the corporation and of the individual shareholder(s) no longer exist (a disregard of formalities requirement) and (2) an inequitable result would occur if the acts are treated as those of the corporation alone (a fairness requirement)).

Syl. Pt. 3, *Laya*, in part.[2]  The Court further stated that evidence showing a company is grossly

---

[2]When applying the two-prong test, the West Virginia Supreme Court in *Laya* identified nineteen factors which should be considered when deciding whether to pierce the corporate veil. The nineteen factors are:

> (1) commingling of funds and other assets of the corporation with those of the individual shareholders;
> (2) diversion of the corporation's funds or assets to noncorporate uses (to the personal uses of the corporation's shareholders);
> (3) failure to maintain the corporate formalities necessary for the issuance of or subscription to the corporation's stock, such as formal approval of the stock issue by the board of directors;
> (4) an individual shareholder representing to persons outside the corporation that he or she is personally liable for the debts or other obligations of the corporation;
> (5) failure to maintain corporate minutes or adequate corporate records;
> (6) identical equitable ownership in two entities;
> (7) identity of the directors and officers of two entities who are responsible for supervision and management (a partnership or sole proprietorship and a corporation owned and managed by the same parties);
> (8) failure to adequately capitalize a corporation for the reasonable risks of the corporate undertaking;
> (9) absence of separately held corporate assets;
> (10) use of a corporation as a mere shell or conduit to operate a single venture or some particular aspect of the business of an individual or another corporation;
> (11) sole ownership of all the stock by one individual or members of single family;
> (12) use of the same office or business location by the corporation and its individual shareholder(s);
> (13) employment of the same employees or attorney by the corporation and its shareholder(s);
> (14) concealment or misrepresentation of the identity of the ownership, management or financial interests in the corporation, and concealment of personal business activities of the shareholders (sole shareholders do not

(continued...)

undercapitalized and corporate formalities were disregarded, which has resulted in basic unfairness, is "sufficient to pierce the corporate veil in order to hold the shareholder(s) actively participating in the operation of the business personally liable for a breach of contract to the party who entered into the contract with the corporation." Syl. Pt. 5, *Laya*, in part. Given these legal principles and the allegations in the Complaint, the Court finds Rudd has alleged sufficient facts to state a plausible claim for relief to pierce the corporate veil. Therefore, the Court denies Defendants' motion to dismiss Count VII.

## C.
### Terry and Crissa Raines' Motion with regard to the Breach of Contract Claims

Terry and Crissa Raines also move to dismiss the breach of contract claims in Counts I through V of the Complaint against them as individuals. As Terry Raines signed the rental

---

[2](...continued)
                reveal the association with a corporation, which makes loans to them without adequate security);
- (15) disregard of legal formalities and failure to maintain proper arm's length relationships among related entities;
- (16) use of a corporate entity as a conduit to procure labor, services or merchandise for another person or entity;
- (17) diversion of corporate assets from the corporation by or to a stockholder or other person or entity to the detriment of creditors, or the manipulation of assets and liabilities between entities to concentrate the assets in one and the liabilities in another;
- (18) contracting by the corporation with another person with the intent to avoid the risk of nonperformance by use of the corporate entity; or the use of a corporation as a subterfuge for illegal transactions;
- (19) the formation and use of the corporation to assume the existing liabilities of another person or entity.

177 W. Va. at 347-48, 352 S.E.2d at 98-99 (footnote omitted).

agreements as "owner" of TRC, Terry and Crissa Raines argue the agreements cannot be enforced against them individually. In *Dieter Engineering Services, Inc. v. Parkland Development, Inc.,* 199 W. Va. 48, 483 S.E.2d 48 (1996), the West Virginia Supreme Court recognized that

> [g]enerally, individual stockholders are not responsible for the debts of a corporation because a corporation is an entity separate and distinct from the people who own it. However, this concept is a fiction of law which should be disregarded when it is urged with an intent not within its reason and purpose, and in such a way that its retention would produce injustices or inequitable consequences.

199 W. Va. at 58, 483 S.E.2d at 58 (quoting, in part, Syl. Pt. 10, *Sanders v. Roselawn Memorial Gardens*, 152 W. Va. 91, 159 S.E.2d 784 (1968) (other citations and footnote omitted)). In addition, the court stated that "'[t]he corporate entity may be disregarded in those situations where the corporate form is being used to perpetrate injustice, defeat public convenience, or justify wrongful or inequitable conduct.'" *Id*. (quoting Syl. Pt. 3, *Mills v. USA Mobile Communications, Inc.*, 190 W. Va. 209, 438 S.E.2d 1 (1993)). Therefore, under these principles, if Rudd successfully demonstrates that the corporate form should be disregarded, Terry and Crissa Raines may be held personally liable to Rudd. As the Court already has determined it will allow Rudd's claim for piercing the corporate veil to proceed, the Court likewise finds Rudd can proceed against Terry and Crissa Raines on the breach of contract claim. Thus, the Court denies their motion to dismiss the breach of contact claims against them.

## D.
## Defendants' Counterclaim for
## Misrepresentation/Detrimental Reliance

In their Counterclaim, Defendants assert that, on or around June 1, 2009, they spoke with Ron Jacobs, a Rudd salesman, about renting smaller equipment to reduce their rental payments. In response, Mr. Jacobs allegedly suggested they purchase the leased equipment which would result in a lower monthly bill. Mr. Jacobs also allegedly told Defendants that they should suspend rental payments on the equipment while Rudd made arrangements to finance the sale. Defendants assert they were harmed by relying upon Mr. Jacobs' statements because, when Rudd failed to secure the necessary financing, Rudd attempted to improve its negotiating position by filing the current action to collect the lease payments, with interest. Defendants claim that either Mr. Jacobs' statements were true, giving rise to a claim for detrimental reliance, or the statements were false, giving rise to a claim for fraud.

In their motion to dismiss, Rudd argues that Defendants' claim for "Misrepresentation/Detrimental Reliance" is actually a claim for fraud and it does not comply with Rule 9(b). In response, Defendants insist that they have not asserted a claim for fraud and, thus, are not bound by the specificity requirement of Rule 9(b). In considering the motion, the Court recognizes that, although "[r]easonable, detrimental reliance upon a misrepresentation is an essential element of a cause of action for fraud" and is subject to Rule 9(b),[3] not all claims for detrimental reliance are fraud claims. For instance, it also may be raised in the context of estoppel. *See Lyng*

---

[3] *Learning Works, Inc. v. The Learning Annex, Inc.*, 830 F.2d 541, 546 (4th Cir.1987) (citations omitted).

*v. Payne*, 476 U.S. 926, 935 (1986) (holding that "[a]n essential element of any estoppel is detrimental reliance on the adverse party's misrepresentations" (citations omitted)); *Carneiro Da Cunha v. Standard Fire Ins. Co.*, 129 F.3d 581, 587 (11th Cir. 1997) (stating that detrimental reliance on a misrepresentation is a required element of equitable estoppel under federal common law). Thus, the Court first must determine whether or not Defendants have stated a claim for fraud.

Here, Defendants assert in paragraph 18 of their Counterclaim that Mr. Jacobs' statement was either "true, and thus gives rise to a claim for Detrimental Reliance, or the statement was then false and gives rise to a claim for Fraud." *Defendants' Counterclaim Against Plaintiff Rudd Equipment Company, Inc.*, at ¶18, in part. Despite the mention of "fraud" in paragraph 18, Defendants disavow any attempt on their part to state a claim for fraud and point to the fact that they did not style the claim as one based upon fraud. Thus, it appears that Defendants are only pursing a claim that they detrimentally relied upon Mr. Jacobs' "true" statement that TRC should not "make any additional payments under the rental agreements because Rudd was completing the financing[.]" *Id.* As reliance upon a "true" statement would constitute non-fraudulent conduct, it is controlled by Rule 8, rather than Rule 9(b). *See Baltimore County v. Cigna Healthcare*, 238 Fed. Appx. 914, 922 (4th Cir. 2007) (holding that, where allegations of both fraudulent and non-fraudulent conduct are made, "only the fraud allegations of a complaint must satisfy the heightened pleading standards of Rule 9(b)" (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104-05 (9th Cir.2003) ("Allegations of non-fraudulent conduct need satisfy only the ordinary notice pleading standards of Rule 8(a).").

Rule 8(a)(2) requires that a pleading state "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" *Fed. R. Civ. P.* 8(a)(2). Defendants assert they have properly stated a claim under Rule 8 because they allege "that there were misrepresentations by Plaintiff, that Defendants reasonably relied on those misrepresentations and that Defendants were harmed by such reliance." *Defendants' Response to Plaintiff Rudd Equipment Company, Inc.'s Motion to Dismiss Counterclaim*, at 4. The problem with Defendants' assertion is that, in paragraph 18 of the Counterclaim, they state that if Mr. Jacobs' statement was "false" it "gives rise to a claim for Fraud"[4] and they disavowed any fraud claim. Instead, they assert that their claim for detrimental reliance is based upon a statement that was true. Now, in response to Rudd's motion to dismiss they assert they have met the requirements of Rule 8 because they have alleged the statement was a "misrepresentation." The Court finds Defendants' argument incongruous.

Mr. Jacob's statement cannot have been "true" and a "misrepresentation" at the same time. Moreover, in paragraph 20 of Count 1 of the Counterclaim, Defendants assert Rudd is liable for Mr. Jacobs' "misrepresentations, actions, and/or inactions" under the doctrine of respondeat superior. This assertion is directly contrary to paragraph 18 which asserts they detrimentally relied upon Mr. Jacobs' true statement. Although parties may plead alternative theories of recovery, Defendants have not done so in this case because they assert that if the statement was false it gives rise to a claim of fraud and they are not asserting a claim for fraud. In this light, Count 1 becomes very confusing because Defendants assert their claim for detrimental reliance is based upon Mr. Jacobs' truthful statement, which Defendants claim was a misrepresentation, in other words, untrue.

---

[4]*Defendants' Counterclaim Against Plaintiff Rudd Equipment Company, Inc.*, at ¶18, in part.

Quite simply, the Court finds Defendants' allegations perplexing and certainly not a "plain statement" showing entitlement to relief as required by Rule 8. Thus, the Court grants Plaintiffs' motion to dismiss this claim.

### E.
### Defendants' Claim for Abuse of Process

In Count II, Defendants allege Rudd brought this lawsuit to take advantage of the misrepresentations of its own employees and increase its bargaining power. In addition, Defendants assert that Rudd's claims against Terry and Crissa Raines individually and for fraud are an attempt to malign them in the community. Defendants concede that it generally is not an abuse of process to file a complaint, but they argue Rudd's claims are unsupported and Rudd filed the Complaint in an attempt to enhance its bargaining position.

In *Preiser v. MacQueen*, 177 W. Va. 273, 352 S.E.2d 22 (1985), the West Virginia Supreme Court held that "[g]enerally, abuse of process consists of the willful or malicious misuse or misapplication of lawfully issued process to accomplish some purpose not intended or warranted by that process." 177 W. Va. at 279, 352 S.E.2d at 28 (citations omitted). Additionally, the court differentiated abuse of process from malicious prosecution by explaining that an abuse of process "'*is not commencing an action or causing process to issue without justification*, but misusing, or misapplying process justified in itself for an end other than that which it was designed to accomplish. The purpose for which the process is used, *once it is issued*, is the only thing of importance.'" *Id*. at n.8 (emphasis added; quoting W. Prosser, Handbook of the Law of Torts § 121 (1971)). To properly state a claim for an abuse of process, there must be

> first, an ulterior purpose, and second, a wilful act in the use of the process not proper in the regular conduct of the proceeding. Some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process, is required; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions. The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or club. There is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the issuance or any formal use of the process itself, which constitutes the tort.

*Id.* When confronted with a similar issue in *Southern States Cooperative Inc. v. I.S.P. Co., Inc.*, 198 F. Supp.2d 807 (N.D. W. Va. 2002), the district court noted that, "[a]lthough West Virginia had not decided the issue explicitly, other jurisdictions have held that '[t]he mere filing of a complaint does not give rise to a claim for abuse of process.'" 198 F. Supp.2d at 816 (N.D. W. Va. 2002) (quoting *Riddell Sports Inc. v. Brooks*, 872 F. Supp. 73, 79 (S.D. N.Y.1995)). In light of this line of cases and the West Virginia Supreme Court's pronouncement in *Preiser*, the district court found there was no abuse of discretion where it was alleged that a counterclaim was filed to harass and intimidate the plaintiffs, but there were no allegations that the defendants improperly used the counterclaim *after it was filed*. 198 F. Supp.2d at 815-16.

This Court agrees with its sister court's analysis. Here, Count II focuses on the filing of the Complaint and alleges there was an ulterior motive for *filing* the Complaint. There are no

facts alleged that Plaintiffs have misused the process *after* the Complaint was filed.[5]  Accordingly, the Court finds that the filing of the Complaint in this case is not an abuse of process and, therefore, **GRANTS** Plaintiff's motion to dismiss Count II of the counterclaim.

### III.
### CONCLUSION

Accordingly, for the foregoing reasons, the Court **DENIES** Defendant Terry Raines Contracting, LLC's Motion to Dismiss Counts VI and VII of Plaintiff's Complaint [doc. no. 9] and Defendant Terry and Crissa Raines' Motion to Dismiss Plaintiff's Complaint [doc. no. 10], and **GRANTS** Plaintiff Rudd Equipment Company, Inc.'s Motion to Dismiss Counterclaim [doc. no. 13].

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER: September 29, 2010

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE

---

[5]As noted by Rudd, Defendants' claim is more akin to a claim for malicious prosecution, rather than abuse of process.